E-FILED
Monday, 10 August, 2026  04:12:29 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

NICKOLAS A. KUNKES; LTD
TECHNOLOGY SERVICES, INC.,

    *Plaintiffs,*

v.

THOMAS BLUMENSHINE,

    *Defendant.*

Case No. 1:23-cv-01454-JEH-RLH

## ORDER

The Court assumes familiarity with the background of this case. This Order addresses Plaintiffs' pending motion to compel. (Doc. 74.) But the Court is not starting from scratch. To the contrary, the Court held a hearing on that motion on May 11, 2026, and partially granted it. In doing so, the Court ordered Blumenshine to produce four categories of financial records. (*See* Minute Entry dated May 11, 2026.) But the Court reserved ruling on Plaintiffs' sanctions request until Blumenshine was given an opportunity to comply. The parties have now each submitted a status report detailing the extent of Blumenshine's cooperation in discovery since May 11.

Plaintiffs' twenty-one page, single-spaced status report argues that Blumenshine failed to comply with the Court's discovery directives. It states that Blumenshine—rather than explicitly address Plaintiffs' requests—sent "a box containing spreadsheet printouts, envelopes, and receipts organized under Defendant's own handwritten exhibit and line-number system." (Doc. 81 at 2.) It describes the production as "incomplete" and "selective." (Doc. 81 at 2.) And it lists

approximately twenty-one ways in which Blumenshine has failed to observe the Court's instructions. (*See* Doc. 81 at 7–17.)

Blumenshine's status report tells a different story. He insists that all available payroll records were produced on a USB drive at the May 11 hearing. He explains that, to respond to Plaintiffs' requests, he "created a spreadsheet workbook identifying each of the 4,996 transactions contained with the Plaintiffs' 165-page exhibit," and that the "workbook contains eleven separate worksheets corresponding to Plaintiffs' exhibits 1 through 11." (Doc. 85 at 1.) And he states that he "retrieved all available banker boxes containing company records" and "manually reviewed approximately eleven years of receipts, invoices, and other supporting documentation, consisting of an estimated 25,000 or more documents." (Doc. 85 at 1.)

Based on the parties' status reports, the Court finds that Blumenshine has made a good-faith effort to comply with the Court's previous discovery orders. Indeed, it appears that Blumenshine expended a significant amount of time and energy in attempting to produce to Plaintiffs the financial information they seek. The Federal Rules do not require Blumenshine, under the circumstances presented here, to create a retrospective accounting, compile new financial analyses, reconcile years of financial records, or effectively prepare Plaintiff's trial presentation by connecting every challenged expense with a corresponding receipt and articulating a business justification where no contemporaneous explanation or accounting existed.

That is not to say, however, that Blumenshine's responses fully satisfied every discovery request or complied in every respect with the Court's prior orders. But

2

context matters. This case involves an immense amount of financial data related to the parties' company, and much of it was never digitized or organized. Yet the Federal Rules do not require parties to reconstruct or reorganize documents to an opposing party's satisfaction. Rule 34 generally requires only that responsive documents be produced as they are kept in the usual course of business or organized and labeled to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E)(i). And it appears Blumenshine has honored that command. Also relevant to the context of this dispute is that Blumenshine is proceeding in this matter pro se. As the Court previously recognized, that does not excuse compliance with federal discovery rules. But the Court must take that into account when determining whether Blumenshine—a non-lawyer with no apparent litigation experience—has made a good-faith attempt at compliance.

That said, the Court cannot turn a blind eye to the history of this case. The docket reflects that this discovery dispute has beset the parties since at least September 2025—and probably earlier. (Doc. 80 at 1.) Since then, the dispute has precipitated a staggering number of hearings, correspondence between the parties, and court orders. (*See, e.g.*, Docs. 60, 74, 81, 80, 85.) All of that has been incredibly taxing in terms of time, money, and effort. Paying that tax, of course, has been both Plaintiffs' counsel and the Court. Blumenshine's attempts to comply with the Court's orders and the federal discovery rules should have been made long before May 11, 2026. The imposition of sanctions is therefore appropriate. *See* Fed. R. Civ. P. 37(b)(2)(A) (empowering courts to issue "just orders" for a party's discovery

3

violations); *see also* Fed. R. Civ. P. 37(b)(2)(C) (permitting courts to "order the disobedient party" to "pay the reasonable expenses, including attorney's fees," caused by discovery violations). Plaintiffs' counsel represents that he has spent $13,167.00 in billable hours since the inception of the dispute. Under the circumstances, the Court finds that a monetary sanction against Blumenshine in that amount is warranted. Plaintiffs also request a host of additional sanctions, but the Court declines to impose them. The monetary sanction imposed here adequately compensates Plaintiffs for the expenses caused by Blumenshine's discovery noncompliance and sufficiently serves the purposes of Rule 37.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel, (Doc. 74), is GRANTED in accordance with this Order. Blumenshine is ORDERED to pay Plaintiffs' counsel $13,167.00.

*So ordered.*

Entered this 10th day of August 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge

4